UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEAN WALSH,

    Plaintiff,

v.

F/V ARCTIC BARUNA I, et al.,

    Defendants.

CASE NO. C04-2453JLR

FINDINGS OF FACT AND CONCLUSIONS OF LAW

    This matter came before the court for a bench trial on July 17, 2006. John Merriam and Gordon Webb appeared as counsel for Plaintiff. Michael Williamson appeared as counsel for Defendant. Having heard testimony, examined the parties' evidence, and heard counsel's arguments, the court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1. Plaintiff Sean Walsh is a 46-year-old resident of Washington. He holds a 1600-ton master's license from the Coast Guard for the operation of fishing vessels. Mr. Walsh began work in the commercial fishing industry some fifteen years ago.

2. In 1999, Mr. Walsh dislocated his shoulder in a skiing accident. He underwent surgery and physical therapy. Mr. Walsh injured his shoulder again two years

FINDINGS & CONCLUSIONS – 1

later while rock climbing. His doctor performed a "Bankart repair" on his shoulder and sometime thereafter, cleared him to return to work.

3. Defendant F/V ARCTIC BARUNA I ("the vessel"), is a 143-foot fishing vessel, operating in navigable waters and engaged in maritime commerce.

4. Defendant Arctic Baruna, LLC ("Arctic Baruna") employed Mr. Walsh as Chief Mate aboard the vessel for the 2003 Opilio Crab season, from early January 2003 to February 13, 2003.

5. Mr. Walsh originally contacted the vessel's Master, Kevin Blakely, to inquire about working aboard the vessel for the King Crab season in late October 2002. At this time, he told Mr. Blakely about his past shoulder trouble. Mr. Blakely had already hired his crew for the trip, but contacted Mr. Walsh in December 2002 for the Opilio Crab season. Mr. Walsh accepted the job.

6. Upon signing his employment contract, Mr. Walsh failed to disclose his full medical history, believing that it was unnecessary to do so.

7. Prior to the January 2003 Opilio Crab season, Arctic Baruna moored the vessel in Kodiak, Alaska for several weeks.

8. During Mr. Walsh's voyage, Arctic Baruna equipped the vessel with at least one four-inch mooring line.

9. A four-inch mooring line is typically used to secure a vessel such as the F/V ARCTIC BARUNA I in a weather-exposed harbor for a lengthy period of time. Such lines are not intended for everyday use as they are heavy and difficult for a crew member to handle. By comparison, a two-and-one-half-inch mooring line is easier to handle. As such, a two-and-one-half-inch line is appropriate for day-to-day use aboard a vessel like the F/V ARCTIC BARUNA I operating with a small crew.

FINDINGS & CONCLUSIONS – 2

10. The vessel's Master, Mr. Blakely, could not recall the diameter of the mooring lines available at the time that Mr. Walsh served as Mate; rather, he stated that "the lines all get put away and then it is whatever [the crew] drag[s] out." Blakely Dep. at 20.

11. Among other tasks as Mate, Mr. Walsh held responsibility for tying up the vessel with the mooring lines and providing direction to other crew members.

12. On January 13, 2003, Mr. Walsh injured his shoulder while attempting to tighten the slack in a four-inch mooring line on the vessel's bow. Although he could have asked for assistance, Mr. Walsh handled the mooring line alone. He had previously tied and untied the vessel three or four times.

13. Mr. Walsh did not immediately report his injury, hoping that it would heal with time. Four or five days later, Mr. Walsh told Mr. Blakely what had happened.

14. Mr. Walsh's injury on January 13, 2003 was unrelated to his prior shoulder dislocations in 1999 and 2001.

15. Sometime after Mr. Walsh departed the vessel, an unknown individual altered the log book to show that Mr. Walsh became injured as a result of a "galley bump" on January 19, 2003.

16. An insurance adjustor with Ocean Marine Claim Services, Aaron Evich, was responsible for processing Mr. Walsh's claim. Mr. Evich was not responsive to Mr. Walsh. Ultimately, Mr. Evich suffered a mental breakdown and stopped returning Mr. Walsh's phone calls altogether in early July 2003.

17. Mr. Walsh scheduled shoulder surgery for June 24, 2003. Concerned that Arctic Baruna would not pay for the procedure, he delayed surgery so that he could earn money. He also hoped that he could avoid the operation altogether.

18. Between June and December of 2003, Mr. Walsh worked two jobs as Master and Mate aboard other vessels. Mr. Walsh performed light duties on both trips.

FINDINGS & CONCLUSIONS – 3

19. In December 2003, with his shoulder still bothering him, Mr. Walsh rescheduled surgery for January 27, 2004. He relied on his continuing health coverage from a past job with the Boeing Company to pay for the operation.

20. Mr. Walsh achieved maximum cure six months later, on July 27, 2004.

21. Excluding his time aboard other vessels, Mr. Walsh was solely responsible for his food and lodging expenses.

22. Eventually, after Mr. Walsh initiated suit, Arctic Baruna agreed to pay maintenance ($20 per day) and cure starting from February 13, 2003 through May 31, 2003 and again from the date of Mr. Walsh's surgery until April 16, 2004.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this matter pursuant to 46 U.S.C. § 688 (the "Jones Act") and 28 U.S.C. § 1333 (general maritime law).

**Maintenance and Cure**

2. When a seaman is injured in the service of his vessel, the shipowner has an obligation to pay maintenance (compensation for room and board) and cure (payments for medical treatment necessary to restore the seaman to health). Vaughan v. Atkinson, 369 U.S. 527, 532 n.4 (1962); MARTIN J. NORRIS, THE LAW OF SEAMEN §§ 26:5-26:6 (3d ed. 1985) (defining maintenance and cure). A seaman's entitlement to maintenance and cure continues until he reaches "maximum cure" – a recovery as complete as the injury allows. Permanente S.S. Corp. v. Martinez, 369 F.2d 297, 298-99 (9th Cir. 1966).

3. The seaman need not show that he was under a physician's constant care during the time period of his disability. See Seville v. United States, 163 F.2d 296, 299 (9th Cir. 1947) (reasoning that mere rest and disuse of sprained wrist constituted medical treatment).

FINDINGS & CONCLUSIONS – 4

4. A seaman's return to employment does not as a matter of law terminate the maintenance and cure obligation of the prior employer. Martinez, 369 F.2d at 299.

5. Attorneys' fees are available in instances where the shipowner "willful[ly] and persistent[ly]" withholds maintenance and cure. Glynn v. Roy Al Boat Mgmt. Corp., 57 F.3d 1495, 1501 (9th Cir. 1995).

6. When a seaman intentionally conceals his medical condition to a shipowner, he may lose his entitlement to maintenance and cure. Burkert v. Weyerhaeuser S.S. Co., 350 F.2d 826, 829 n.4 (9th Cir. 1965). A defendant must show that the seaman concealed a medical condition that "he kn[ew] or should [have] know[n] is related to the illness or injury for which maintenance and cure are requested." Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 990 (9th Cir. 1987) (citing Sammon v. Cent. Gulf S.S. Corp., 442 F.2d 1028, 1029 (2d Cir. 1971) ("The concealment of a previous condition is fraudulent only if the seaman knows or reasonably should know that the concealed condition is relevant.")).

7. As to the rate of maintenance, the court considers what is reasonable in the seaman's locale and not simply what would cover the literal equivalent of conditions aboard the ship. Hall v. Noble Drilling, 242 F.3d 582, 587-88 (5th Cir. 2001). Further, the court is not bound by a seaman's individual employment contract. See Am. Seafoods Co. v. Nowak, No. C01-161P, 2002 WL 31262105, at *2-3 (W.D. Wash. Feb. 25, 2002).

8. Here, Arctic Baruna has failed to show that Mr. Walsh intentionally concealed a relevant medical condition. Mr. Walsh reasonably believed that he had been cleared by his doctor to resume work and that his condition was irrelevant to the question of whether he was fit to serve as the vessel's Mate. Thus, Arctic Baruna has failed to establish a defense to its obligation to pay maintenance and cure.

FINDINGS & CONCLUSIONS – 5

9. The court concludes that Mr. Walsh is entitled to maintenance at a rate of $40 per day. It is unreasonable to require Arctic Baruna to pay the full extent of Mr. Walsh's mortgage payments, property taxes, and homeowner's insurance at $55 per day; however, the court concludes that Mr. Walsh's contractual rate of $20 per day is insufficient to cover food and lodging costs in Mountlake Terrace, Washington, where Mr. Walsh resides.

10. That Mr. Walsh returned to work and rescheduled his original surgery date of June 2003 is of no consequence. By not processing his claim, Arctic Baruna effectively forced Mr. Walsh back into employment. Arctic Baruna cannot now claim it is exempt of its obligation during this time period.

11. Accordingly, the court orders Arctic Baruna to pay Mr. Walsh $10,400. This amount includes[1]: the $20 difference per day for the amount already paid to Mr. Walsh, plus $40 per day from December 1, 2003 through January 26, 2004, plus $40 per day from April 17, 2004 through July 27, 2004 (the date of maximum cure).[2]

12. The court concludes that Mr. Walsh is not entitled to pre-judgment interest because Mr. Walsh has failed to provide the court with any evidence from which the court can determine the date on which he should have received his contractual maintenance payments from Arctic Baruna.

---

[1] Mr. Walsh's supporting evidence and trial brief do not paint a clear picture of the amount of maintenance that Arctic Baruna has already paid or the dates and timing of such payments. The court bases its award on the record before it.

[2] Mr. Walsh does not claim that he is entitled to maintenance payments between May 31, 2003 and December 1, 2003; rather, he seeks maintenance during this period as "compensatory damages." Maintenance and cure is not compensatory in nature and the court declines to award maintenance on this basis. See Calmar S.S. Corp v. Taylor, 303 U.S. 525, 528 (1938).

FINDINGS & CONCLUSIONS – 6

13. Pursuant to 28 U.S.C. § 1961, Mr. Walsh is entitled to post-judgment interest at a rate of 5.10% to run from the date that the court enters judgment.

14. Lastly, the court concludes that Arctic Baruna persistently refused to comply with its obligation to pay maintenance and cure to Mr. Walsh.  To that end, the court directs Mr. Walsh's counsel to submit a declaration by August 14, 2006 that reflects fees and costs from which the court can determine a reasonable award.  Failure to do so will constitute waiver of such an award.

**Seaworthiness**

15. A ship owner has an absolute duty to furnish a seaworthy ship. Ribitzki v. Canmar Reading & Bates, Ltd. P'ship, 111 F.3d 648, 664 (9th Cir. 1997) (citing Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960)).

16. In order to prevail on a seaworthiness claim, Mr. Walsh must show that the warranty of seaworthiness applied to him and his task, he was injured by equipment that was either part of the ship or an appurtenant appliance, the equipment was not reasonably fit for its intended use, and that the unseaworthy condition proximately caused his injury. Ribitzki, 111 F.3d at 664.  A seaworthiness claim can arise from a defective physical condition, however temporary, and does not require actual or constructive knowledge on the part of the ship's owner or employer. Id.

17. Failure to provide the proper diameter mooring line for an intended use is "a classic case of unseaworthiness." Allen v. Seacoast Prods., Inc., 623 F.2d 355, 360 (5th Cir. 1980) overruled on other grounds by Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 337 (5th Cir. 1997); see also Martinez v. United States, 705 F.2d 658, 660-61 (2d Cir. 1983) (holding vessel whose mooring lines did not secure her to her berth in river current was unseaworthy as a matter of law).

FINDINGS & CONCLUSIONS – 7

18. The court concludes that the F/V ARCTIC BARUNA was unseaworthy. The parties do not dispute that the warranty of seaworthiness applies to Mr. Walsh and his task. The parties also do not dispute that Mr. Walsh was injured while tightening the slack in one of the mooring lines. Because the court finds that a four-inch line is not reasonably fit for its intended use of day-to-day handling, the court concludes that the vessel was unseaworthy.

19. Still, Mr. Walsh must prove damages by a preponderance of the evidence. Mr. Walsh has failed to do so; rather, he simply prays for $40,000 in general damages to compensate him for his pain and suffering. The court declines to award additional damages without the requisite evidentiary support.

**Negligence**

20. To recover under the Jones Act, Mr. Walsh has the burden of establishing by a preponderance of the evidence: (1) negligence on the part of his employer, and (2) that the negligence was a cause, however slight, of his injuries. Havens v. F/T Polar Mist, 996 F.2d 215, 218 (9th Cir.1993). The quantum of evidence required to support a finding of negligence under the Jones Act is lower than that which is required for common law negligence – even the slightest negligence is sufficient. Id. Mr. Walsh must also demonstrate that the owner of the vessel knew, or in the exercise of reasonable diligence should have known, of the unsafe condition. Id.

21. Contributory negligence is not a barrier to recovery under the Jones Act, although it may pose a limit on damages. Jacob v. New York, 315 U.S. 752, 755 (1942).

22. Mr. Walsh has demonstrated that Arctic Baruna failed to use reasonable care that a reasonable ship owner would exercise under the circumstances. Mr. Blakely, as Master of the F/V ARCTIC BARUNA, allowed his crews to do "whatever they want" in terms of selecting the appropriate lines. Blakely Dep. at 20.

FINDINGS & CONCLUSIONS – 8

23. Mr. Walsh concedes that he was contributorily negligent in his failure to obtain assistance in handling the heavy line and in his failure to report the unsafe condition.

24. Regardless, for the same reason that Mr. Walsh cannot recover for his unseaworthy claim, Mr. Walsh cannot recover damages under the Jones Act. That is, Mr. Walsh has failed to prove damages as a result of Arctic Baruna's negligence by a preponderance of the evidence.

**ORDER**

Based on the foregoing findings of fact and conclusions of law, the court orders as follows:

1. Mr. Walsh shall recover damages in the amount of $10,400 plus post-judgment interest at a rate of 5.10% to run from the date of judgment until paid in full.

2. The court will award Mr. Walsh's reasonable attorneys' fees and costs in a separate order following a proper and timely submission by Mr. Walsh's counsel.

DATED this 8th day of August, 2006.

JAMES L. ROBART
United States District Judge

FINDINGS & CONCLUSIONS – 9